### The People of the State of New-York v. Caleb Brown and others.

THIS was an information filed at the direction of the legislature, by the late attorney-general, against the defendants, for an intrusion on certain lands lying in the county of *Otsego.*

The defendants claimed under letters patent, of the 6th *September,* 1770, for 9,200 acres, granted by his Majesty, *George* III. of *Great-Britain, France* and *Ireland,* king, &c. at a quit rent of 2*s.* 6*d.* sterling, for every hundred acres. After the usual reservations of mines, and white pine trees, for masts, the grant contained the following proviso : " *Provi-* " *ded,* further, and upon condition also, neverthe- " less, and we do hereby for us, our heirs and suc- " cessors, direct and appoint, that this our present " grant shall be registered and entered on record, " within six months from the date hereof, in our " secretary's office, in our city of *New-York,* in our " said province, in one of the books of patents, " there remaining ; and that a docquet thereof, shall " be also entered in our auditor's office there, for our " said province, and that in default thereof, this our " present grant shall be void and of none effect, any " thing before in these presents contained, to the " contrary, thereof, in any wise notwithstanding."

It was admitted, that no docket of the said letters patent, had been entered in the office of the au-

ditor, pursuant to the said proviso ; but the follow- <span style="float:right">Nov. Term, 1803.</span>
ing entry made since the year 1797, is found in a
memorandum, took of patents in the office of the
comptrollèr, of this state, to wit : " 1558, patent
" granted to *Leonord Lispenard*,* and others, for   * The name
" 92,00 acres of land, in *Albany* county, dated the   of the first patentee.
" 6th of *September*, 1770, at 2*s*. 6*d*. sterling for
" every hundred acres." About the same time,
when the above memorandum was made, *Samuel
Jones*, Esq. comptroller of this state, pursuant to the
laws relative to quit rents, caused the aforesaid tract
of land to be advertised† for payment of the quit   † Under the 8th section
rents due.   of the " act concerning quit rents," passed the 8th of *April*, 1801.

It was further admitted, that on the 3d of *April*,
1799, the sum of 3 dollars and 84 cents, was paid
into the treasury of this state, by *George Stanton*,
one of the original patentees, in pursuance of the
a ct for the collection of quit rents, as the arrears and
commutation then due, on lots no. 41 and 42; and
that on the 28th of *October* following, 3 dollars and
82 cents, were in like manner paid, on 50 acres of
the grant, by one *Jesse Clark*, who had purchased
under the patent, from which the defendant *Brown*,
derives his title ; but neither the lots 41 and 42, nor
the 50 acres on which the said 3 dollars and 82 cents
were paid, constitute any part of the lands in his
tenure.

On these facts, it was submitted to the court, whe-
ther the defendants were or were not guilty of the
intrusion complained of.

SPENCER, Attorney-General. It is admitted,
that there was no docket entered in the auditor's

office, according to the proviso in the letters patent. The information is grounded on this principle; that the forms required by the grant created a condition, proviso, or limitation, which was to make it void, on the not doing a certain act by the patentees. If, therefore, this act has not been performed, the instrument is a nullity, and the people have a right to consider all persons now on the land as intruders. It may, perhaps, be urged in behalf of the defendant, that the act concerning quit rents has done away the forfeiture : especially, as the officers of government have received the quit rents due, and have, therefore, considered the patent as in existence and good. That, however, will depend on whether the not docketing the patent within the time limited, did not cause the estate of the patentees instantly to cease; or whether, even allowing the contrary, the payment could purge the forfeiture for more than those very lands on which made, and which do not include those for which the intrusion is brought. There can be no doubt that every grantor, whether a state or an individual, may annex to his grant whatever conditions he pleases, provided they are not repugnant to principles of law. Here the condition is, that the grant shall " *be void and of none effect.*" Therefore, the acceptance of rent could not restore what was gone. Sir *Moyle Finch's* case, *Cro. Eliz.* 321. shows the soundness of this position. This, it may be said, was the case of a demise for years. A distinction, therefore, may be attempted between *that* and the present, which is of a fee. In fact, however, the diversity does not exist. This the

court will see in 17 *Vin.* 81. *pl.* 1. *n.** it is not, that in one case the estate is void, and in the other voidable ; but whether the determination be by the same means as create the interest. The proviso here, was a limitation which ended the estate on non-performance, because, as it was created by matter of record, so it was to be destroyed by matter of record. It is generally true, that where a freehold is to be defeated, entry is necessary, but it is not so, where an act that ought to appear of record is not done. It is laid down, that if an estate granted by the crown determine by a condition broken, the king shall be seised without office found, where the breach is apparent upon record. 7 *Com. Di.* 53. (*D.* 70.†) It is the revesting of the estate which we contend for here. This makes the difference between the present question, and that of *Van Shaick*, in 1796, in which it was decided, by the court of errors, that a new grant would not be made till after office found, not that an information would not lie before. There can be no doubt of the words used in the grant creating a condition, *Lit. sec.* 329. which was a limitation or qualification of the estate. For this

† The cases there referred to, are of leases.

---

* The decision alluded to, is *Stephens* v. *Potter*, *Cro. Car.* 100. 2 Res. but that merely determined that a lease for years, reserving rent payable at the exchequer, is void on non-payment, without office found ; whereas, if the rent be payable to the receiver-general, non-payment without office found, does not vacate. The reason is obvious, as the crown can grant only by record, it can be informed only by record ; the non-payment to the receiver, is a matter in *pais* ; when found by office, it is of record, and so is non-payment at the exchequer. See this, however, doubted, 2 *Roll's Abr.* 216. (H.)

Nov. Term, purpose, the word "provided," was certainly the
1803.
——— most fit. On breach of it, the estate must be judg-
ed in the grantor; or, as here, in the people, *Lit. sec.*
350.\* So here, as the non-performance was a re-
cord, the right to proceed by intrusion accrued before
office found, the estate of the patentees being totally
divested. The next consideration is, whether any
thing has been done to waive the forfeiture. This
may be laid down as an established position, what
is void cannot be confirmed, what is voidable may.
As, then, the interest of the patentees was absolute-
ly annulled, the receipt of the quit rents could not
revive it, *Jenkins* v. *Church, Cowp.* 482. *Doe* v.
*Butcher, Doug.* 50. Even in voidable cases, the
mere acceptance of rent, unaccompanied with any
† See *Green's* other circumstances, will not work a confirmation.†
case, *Cro.*
*Eliz.* 3. *Roe* No receipt can revive or confirm, unless taken with
v. *Harrison,*
2 *D.* & *E.* a knowledge of the forfeiture, and an intent to
425.
waive. The act concerning quit rents does not re-
cognize any loss of title in the defendant, or others
holding under the same patent. No payment, there-
fore, to an officer acting by authority of a general
law, with a power merely to extinguish quit rents
could revest. All that he could do was to bar the
right of the people on them when due, and not by
taking them if not due, to give away the land of the
state.

---

\* The case of a lease for five years, with condition to have fee,
on paying of 40 marks at the end of two years, and livery of sei-
sin according to the deed. Revested by implication, because
grantor could not enter upon the breach, as, by his own grant,
the grantee had three years in the land.

*Emott* and *Van Vechten*, contra. Though from the length of time the defendant, and those under whom he claims, have been in possession, the case is a hard one, still we are ready to exculpate both the present and late Attorney-General, from all imputation of rigour. They have acted only in obedience to resolutions of the legislature. The case divides itself into two questions. 1st. Whether the grant be void, or voidable? 2d. Whether, if so, the present form of action is the appropriate remedy? Whether, void or voidable, will depend on a number of subordinate inquiries. We did not, it must be confessed, expect that the proviso would have been urged as a limitation, which always goes on a certain express time of determination; it is a condition* and nothing more, in which case, as the estate might continue over, it was voidable, and not void. But the words in question, created neither the one nor the other; they were merely directory on the officers of government, and did not oblige us to do any thing: they are separated from the conditions by which the grantees were bound by specific acts. The words are, "we direct and appoint." The clause itself is rare, this being the only grant we can find, in which it is contained. The officers of government ought, the clause being directory, to have given notice to the patentees to come in and docket; for, to the patentees themselves, the act was nugatory, as they had complete evidence of the right by the grant itself. But, considering the clause as a condition, then we contend, it is repugnant to the grant, and void. It was for an act to be done by the officers of the crown, for the benefit of the crown alone. It is

> * As to conditional limitations, see *Fearne, Con. Rem.* 6 ed. 9.

Nov. Term, the same as if a grantor had conveyed, on condition
1803.
——————  that he should himself lodge the consideration money
within twenty days, in the *United States Bank,* or
the conveyance be void. The result would be to
put the whole grant within the power of the crown;
or what is the same thing, within that of its officers.
But should the condition in the proviso be deemed a
valid one, and obligatory on us, we say it has been
performed; for, if the intent be complied with, it
is sufficient. That the leaning of the court is against
forfeitures, we cite *Bull. N. P.* 96. and that the in-
tent, and not the letter of the words, ought to regu-
late, *Shep. Touch.* 139.* 1 *Atk.* 375.† *Daley* v.
*Desbouverie,* 2 *Atk.* 261. and the cases cited in p. 1.
What, then, was the intent to be answered by this
docket? Merely to inform the court of the exist-
ence of the grant, and the value of the reserved
rent, that no interfering patents might issue, and the
amount of its revenue be known. The entry, there-
fore, in the comptroller's office, taken from the old
minutes there, was fully adequate to every purpose.
For, though two acts are mentioned in the proviso,
to be done, it does not follow, that both are necessary
to be performed. *Long* v. *Dennis,*‡ 4 *Burr.* 2052.

———————————————————————

* That is, if the act done be in law tantamount to the condi-
tion expressed, as if to enfeoff; and a lease release be executed.
So, in the case put, *Litt. sec.* 352. on the doctrine of *cy pres.*

† *Harvey* v. *Aston,* the condition there, was marrying with
consent. The other authority from *Atkins,* relates also to con-
ditions in restraint of marriage.

‡ That also, was a decision on a case in restraint of marriage,
in which the conditions were held to be in the disjunctive, per-
formance, therefore, of one sufficient.

In the present case, however, after a lapse of 30 years, in a country circumstanced as this was, during the revolutionary war, and when the very record may be supposed to have been taken away by the officers of the crown, to presume a docket regularly entered, is no more than what the law will warrant. *Bedle's* case, 12 *Rep.* 5. Should it, nevertheless, be held, that the forfeiture was incurred, we still contend that it has been waived. The argument urged against this position, that there is a distinction between the acts of individuals, and those of officers of government, is contrary to the implication arising from the case of Sir *Moyle Finch*, relied upon by Mr. Attorney-General. For the people are bound by the acts of their agent, in the same manner as any common person. What, then, are those acts? First, the permitting thirty years to elapse in silence; next, the comptroller has made a record or docket, by entering the memorandum stated in the case, to have been written in 1797: it fully sets forth the dates, parties, and rents: this, too, is an act of a public officer. Secondly, by advertising these very lands for the quit rents due, under the authority of the act mentioned in the case. For the language of the advertisement is, we claim not the lands, but the quit rents due. Thirdly, the comptroller has received from one of the patentees, and from a person holding under the grant to them, quit rents for some of those lands, and though they have been paid but upon portions of the tract, yet they will accrue to the benefit of the whole grant. *Goodright v. Davids, Cowp.* 803.* *Pennant's* case, 3 *Rep.*

---

* The point there was, that acceptance of rent, after condition broken with notice of the breach, is a waiver of the forfeiture.

Nov. Term, 1803.

64 *b.** *Green's* case, *Cro. Eliz.* 3.† 3 *Salk.* 3. Independent, however, of what has been before advanced, we contend, that an information for an intrusion cannot be supported before office found. This is absolutely necessary to entitle the people to proceed. In the case of common persons, if it be intended to destroy an estate for condition broken, it is indispensable that an entry should first be made, *Shep. Touch.* 153. Whenever an entry is required of an individual, an office must be found for the king, 9 *Rep.* 96 *b.*‡ 16 *Vin. Abr.* 84. *pl.* 24. *p.* Ibid, 83. *pl.* 19, 20. Even where the whole estate has become void, by the non-performance of the condition, still an office must be found before the tenant can be held an intruder, Sir *Moyle Finch's* case, 2 *Leon.* 143. *Payne's* case, *ibid,* 206. The proviso on which the Attorney-General relies, being a condition, and the estate under the patent taking effect immediately, it is plain that the grant was voidable only, and not absolutely void. This being so, and nothing done to avoid the grant, and put the people into possession, intrusion cannot lie, for it is essential to intrusion that it be on the actual possession§ of the crown, 3 *Black. Com.*

‡ Sir *George Reynel's* case.

---

* Which of the resolutions there made is alluded to, I know not; possibly the third, but that goes on the distinction between void and voidable leases.

† Determined that receipt of rent due, does not prevent re-entry, but if accompanied with a receipt calling the lessee, his farmer or tenant, it does.

§ The words in *Moore,* are, " an information for intrusion is " not a real, but personal remedy, and resembles in all points a " trespass against a subject, for it supposes the queen in posses- " sion."

261. *Moore*, 375. Therefore, in all cases of for- feiture, &c. intrusion will not lie till office found, this being the legal substitute for entry by a private person, and the only means for the crown to regain the possession, for the injury to which the intrusion is brought, *Litt. Abr. p.* 97. (E.) *Moore*, 296, 7. That this is only to be done by office found, *Parstow* v. *Corn, Cro. Eliz.* 855. is an authority fully in point. Besides, the title created by the patent was matter of record, and of course must be avoided by that which is of equal solemnity, *Plowd.* 229. and the cases there cited. The only method, then, to have been pursued, was by an office finding the forfeiture, and intrusion upon that. This will appear still more evident, if we consider the effect of the different proceedings. On the inquest of office, performance of the condition, or refusal by the officer, which is tantamount,* might have been shown, but this could not be done under an information for intrusion, which merely states the possession of the crown, and the defendant's intrusive entry, case of *Alton Woods*, 1 *Rep.* 28. *Plow.* 479. The necessity, therefore, of these measures must appear, that the parties might have notice of the grounds of the claim against them.— This cannot be done by the information now brought, which is not like a writ of escheat that sets forth the whole claim on the part of the crown. If what has been laid down already for us be true, that the docketing was a duty to be performed by the officer, then it is for the honour of the crown, as the old books say, to be presumed that it has been done, case of the *Churchwardens of St. Saviour, Southwark*, 10 *Rep.* 66. For it can never be imagined, that the crown would make a grant, dependent for its validity

* 10 *Rep.* 67
b. 2 *Res.*

Nov. Term,
1803.

on acts to be performed by itself, and omit those acts. Let it be observed too, that no form of docketing is prescribed by the grant; and as the revolutionary war has intervened, it may well be intended that the entry made in the comptroller's office in 1797, was, by way of docket, which would be no more than a memorandum for the guidance of the officers of the crown. If, however, the proviso be a voidable condition, then the doctrine of waiver will apply. For government can never be supposed to do so great a wrong as to permit men to make improvements, then offer to receive a commutation in discharge of quit rents due on those very lands which they claim as forfeited, receive the amount, and then attempt to defeat their grant. Because, having dispensed with the condition in part, by a partial receipt of quit rents, the condition is dispensed with in the whole. *Cro.* * *Dumper* v. *Eliz.* 816.* This species of construction is due to *Sims.* the liberality and honour which we are to suppose constantly actuate the proceedings of government, and is a principle universally acknowledged. 9 *Rep.* 131. *Benley's* case. *Rolyn's* case, 6 *Rep.* 5. 10 *Rep.* 67. In a more peculiar manner is this to be adhered to after a lapse of 30 years, when the rights of third persons, *bona fide* purchasers, and others, are implicated. In *Van Schaick's* case, it was settled, that where a forfeiture was apparent by matter of record, then a *scire facias* should go; when it arose on matter in *pais*, an office must be found. The information, therefore, must fall.

*Spencer* in reply. The words of the proviso are sufficient to show the docketing was not directory to the officers of the crown. The grant was to be valid

on doing several acts, some in *pais*, some in record. If not performed in a certain time, the letters patent were to be *void*. The words direct and appoint, are declaratory *to the patentees*, that the estate granted, should be subject to the condition, of *their* register-ing and docketing. This must always be at the re-quest of the parties, who must do an act towards it : nay, they, according to the colonial system, had to pay for its being done, and, therefore, was clearly a duty in them; for it is coupled with a stipulation, that if it be not performed, the letters patent shall be *void*. This makes the proviso a limitation ; and when so, it is not necessary that an office should be found, because the crown would be immediately re-seised. *Poph.* 53. Whether, however, it be con-sidered as a limitation, or a condition, is immaterial; for no office was necessary. It is required only to make the forfeiture known by matter of record.—— Here the docket for a matter of record, and whether the grant was docketed or not, would appear by in-spection of the records. The forfeiture, therefore, being thus by matter of record, needed not to be found by office. The authorities cited by the other side are in conformity to this position. 2 *Roll. Abr.* 215. *Cro. Car.* 100. *Stephens* v. *Potter.* On the not docketing according to the terms of the proviso, the estate of the patentees was gone, and this being by matter of record, the people were reseised. No act, therefore, of their officer in taking rents not due, could revive an interest absolutely avoided and null. The cases from *Cowper* and *Douglas*, when looked in-to, will show this, though they are quoted as authori-ties against the people. The principle they settle is, that no acceptance will waive a forfeiture, without

Nov. Term, knowledge of all the circumstances · by which that
1803.
forfeiture was worked.    The people had acquired fee
on breach of the condition.    The quit rents, there-
fore, were merged, and a tortious taking by their
officer of what was not due, not knowing it not to be
due, can never waive their rights.

*Van Vechten.*   We say, by the act he was consti-
tuted judge whether quit rents were due or not.

*Spencer.*    We say he was not; that he was a
mere receiver, delegated to receive alone.    The act
of the officer in making the entry in 1797, was, allow-
ing his acts to enure. to the advantage of the defend-
ant, yet it was not in time.    In arguing from the pre-
sumption the 30 years lapse has afforded, the coun-
* Act for li- sel seem to forget, that there is a law* by which the
mitation of
criminal pro- limitation of suits by the people for land, is settled at
secutions,
and of ac-   40 years.    It is an absurdity to settle a limitation at
tions at law. 40 years, and presume against it at 30.    Nor can
1 *Rev. Laws*,
562.         any thing be presumed from the revolution, because
the court knows all the papers in the various offices
were preserved.    In one of the cases referred to, the
presumption arose from this ; that as the deeds were
† 10 *Rep.* 67. delivered in to be cancelled,† the officer should be
2d *Rev.*
presumed to have cancelled them ; but were the
deeds here delivered to be docketed ?    On every
ground, therefore, we consider the people entitled ;
especially as the want of docketing is proved by the
records, and an office found would be only surplus-
age.

*Per Curiam*, delivered by LEWIS, C. J.   This is an
information of intrusion, filed by the late Attorney-

General, and now prosecuted by his successor in office. It comes before the court on a case, which sets forth, that a royal grant, by letters patent, issued in 1770, to *Leonard Lispenard* and others, for 9,200 acres of land, now in the county of *Otsego*, but then in the county of *Albany*, on the annual quit-rent of 2s. 6d. sterling per hundred acres. The grant contains sundry conditions, on the non-performance of any of which it is declared to be void and of none effect. Among the number, are the following: that the grant shall be registered and entered on record, within six months from the date, in the secretary's office ; and that a docket thereof, shall be also entered in the auditor's office. It is admitted, that though the letters patent were duly recorded, no docket was found in the auditor's office ; but that a note of them is found, entered in a memorandum book of patents, kept in the office of the comptroller of the state, bearing date in 1797, and that the quit rents, on parts of the tract, have been paid to the existing government.

The defendant claims title under the said patent, and the question for the court is, Guilty or not Guilty.

To decide this question, it is necessary to inquire whether an information of intrusion lies under the circumstances of this case. To sustain a prosecution of this description it is necessary that the crown formerly, and the government now, should be in the actual seisin or possession of the subject intruded on. I shall lay down a few general principles or maxims,

Q q

which I conceive incontrovertible, and which may be gathered from the two principal cases, relied on, that of Sir *Moyle Finch*, and of Sir *George Reynel*, as well as from the decision of the court for the correction of errors, in the case of the devisees of *Van Schaick* v. *King*.

1st. That the state can acquire seisin or possession of lands, for breach of condition, by matter of record only.

2d. That generally where entry is necessary in the case of a common person, an office is necessary to entitle the state.

3d. Where entry and action are necessary to a common person, an office and *sci. fa.* are necessary to the state.

It is true, there are cases where the crown may be in possession by seizure without office, but they are not cases of this description, they are confined to the forfeitures of the temporality of alien ecclesiastics, where the certainty of the matter appears in the exchequer.

There is an important and striking distinction between the case of Sir *Moyle Finch*, and the one now before us. The forfeiture there was of a term; here, if any, of fee; now a fee shall never be void, absolutely for condition broken, but voidable by entry only, though it is otherwise of a term. But even in *Finch's* case, as reported by *Leonard*, who states it much more at large than *Croke*, both *Popham* and

Nov. Term. 1803.

*Croke* who argued for the plaintiff, and *Manwood*, Chief-Baron, in giving judgment for the plaintiff, admitted, that, although the lease was void without office, it was void in interest and property only, but not in possession. And that though the *Queen* without office, and a common person without entry, might grant it over, yet the former could not without office prosecute for an intrusion, nor the latter without entry for a trespass.

These opinions, I think, decide the question and that judgment must be accordingly for the defendants.

